---

### ERIE & J. R. CO. v. BROWN et al.

(Supreme Court, Special Term, Orange County. January 2, 1908.)

1. CORPORATIONS—ACTIONS—INCORPORATION—ADMISSION.

Where a railroad's petition to condemn land alleged plaintiff's due incorporation and the granting to it by the board of railroad commissioners of the certificate of public necessity and convenience required by Railroad Law, Laws 1892, p. 1395, c. 676, § 59, and the answer did not affirmatively allege that plaintiff was not a corporation, as required by Code Civ. Proc. § 1776, to put its corporate capacity in issue, the allegation of incorporation was admitted.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 2059.]

2. RAILROADS—COMPANIES—INCORPORATION.

Proof by a railroad company, petitioning to condemn land for its road. of the granting by the board of railroad commissioners of the certificate of public necessity and convenience required by Railroad Law, Laws 1892, p. 1395, c. 676, § 59, and the certificate itself, establish compliance by plaintiff with all the requirements of the statute relating to its incorporation and the granting of such certificate.

3. EMINENT DOMAIN—CONDITIONS PRECEDENT TO CONDEMNATION—FILING MAP AND PROFILE.

A railroad's map and profile showed just where the railroad crossed defendants' land which it proposed to condemn, and the center and side lines and the exact location of the road with reference to several buildings on the property and the public highway; and the profile showed stations marked thereon corresponding with the stations on the map, from which the height and width of the roadbed and the depth of the cuts across defendants' property could be ascertained. *Held*, that such map and profile constitute a sufficient compliance with the statute providing that, before constructing any part of its road or instituting con-

demnation proceedings, the railroad company must file a map and profile of the route adopted by it within the county.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 500–504.]

**4. SAME—FORM.**

Where a proposed railroad's map and profile were filed together and bore corresponding station numbers, etc., they were not objectionable because made on separate sheets of paper.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, § 501.]

**5. SAME—TIME OF COMMENCEMENT OF PROCEEDINGS—STATUTES.**

Railroad Law, Laws 1890, p. 1084, c. 565, § 6, provided that no such corporation should institute condemnation proceedings until after the expiration of 15 days from the service of notice required by such section, "nor until after the final determination of all applications that might be made for a change of route." By Laws 1892, p. 1384, c. 676, § 6, the section was amended by eliminating the provision quoted. *Held*, that the giving of the prescribed notice was the only prerequisite to the institution of condemnation proceedings, and that the railroad company was not required to delay the same until determination of applications for a change of route.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, § 475.]

**6. SAME—EFFORT TO AGREE WITH OWNER—EVIDENCE.**

In a proceeding to condemn land for a railroad right of way, evidence *held* to establish that plaintiff had been unable to agree with defendants for the purchase of the land.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, § 533.]

**7. SAME—WATERS.**

Railroad Law, Laws 1892, p. 1386, c. 676, § 7, providing that waters commonly used for domestic, agricultural, or manufacturing purposes shall not be taken by condemnation to such an extent as to injuriously interfere with such use in the future, applies only where the railroad company seeks to take waters for its use, and does not restrain the condemnation of lands for a right of way and the construction of its road over a pond in such a manner as not to injuriously interfere with the property owners' use of the waters of the pond.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, § 95.]

Condemnation proceedings by the Erie & Jersey Railroad Company against Walter H. Brown and others. Judgment for plaintiff.

Bacon & Merritt, for petitioner.

Geo. R. Brewster, for defendants.

TOMPKINS, J. The petitioner, a railroad company organized under the laws of the state of New York, seeks to acquire by condemnation a strip of land across the farm owned by the defendants, to be used as a part of a steam railroad now in process of construction through Orange county. The defendants answer the petition, and urge several reasons for a dismissal thereof.

The first is that the plaintiff has not proven its incorporation in compliance with the provisions of subdivisions 6 and 13 of section 2 of the railroad law (Laws 1892, p. 1383, c. 676). The petition alleges the due incorporation of the plaintiff and the granting to it by the Board of Railroad Commissioners of the state of a certificate

of public necessity and convenience, under section 59 of the railroad law. The answer does not affirmatively allege that the plaintiff is not a corporation, as required by section 1776 of the Code of Civil Procedure, to put the plaintiff to proof in support of the fact and validity of its incorporation. Hence the allegation of the petition as to the incorporation of the plaintiff stands admitted, while the proof of the granting by the Board of Railroad Commissioners of the certificate, under section 59 of the railroad law, and the certificate itself, establish compliance by the plaintiff with all the requirements of the statute relating to its incorporation and the granting of the said certificate.

The statute requires that, before constructing any part of its road or instituting any proceeding for the condemnation of real property, the petitioner shall make a map and profile of the route adopted by it in such county. The defendants deny the sufficiency of the map and profile filed by the petitioner, and claim that it fails to show with sufficient precision or definiteness the proposed route across the defendants' farm. The map and profile do, however, show just where the railroad crosses the defendants' land and what it proposes to take. There is a center line, and there are side lines upon the map showing the exact width of the tract proposed to be taken, and the exact location thereof with reference to several buildings upon the property of the defendants and the public highway, and by reference to the profile and the stations marked thereon, corresponding with the stations upon the map, the defendants could have learned the height and grade of the roadbed and the depth of the cuts across their property. The purpose of the filing of the map and profile is to give the landowner exact information as to the proposed location of the road and an accurate description of the land to be taken. I do not see how the defendants in this case could have been misinformed or misled concerning the location of the proposed railroad, or the precise land to be taken, if careful reference had been had to the map and profile.

The claim is made by defendants' counsel that the map and profile are not in conformity with the statute, because they are not on the same paper. There is nothing in the statute that requires that they should be on the same sheet of paper. It seems to me that it would have been impracticable to put both map and profile on the one sheet of paper, and that they can be more easily handled and more conveniently examined in their present form than if they were on one sheet of paper, and inasmuch as they were filed together, and bear corresponding station numbers, they seem to be as complete and as much in accord with the letter and spirit of the statute as they can well be.

The defendants contend that this proceeding is premature, for the reason that a proceeding was instituted by the Gumaerd Lead & Zinc Company, under section 6 of the railroad law, for an alteration of the plaintiff's proposed route, and that that proceeding is now pending and undecided, on an appeal from the decision of the commissioners appointed under section 6 to the Appellate Division of the Supreme Court. The facts in reference to this proceeding, as

agreed upon the trial, are as follows: The Gumaerd Lead & Zinc Company, within 15 days after receiving notice of the filing of the plaintiff's map and profile, made application to a justice of this court for the appointment of commissioners to examine the plaintiff's proposed route; the proposed alteration affecting less than a mile of the plaintiff's proposed route at a point about 25 miles distant from the lands of the defendants involved in this proceeding. Commissioners were appointed, and subsequent to the commencement of this action, but before the trial of the issues herein, made their report and decision confirming the route as laid out by the plaintiff. Thereafter an appeal was taken from the decision of the commissioners to the Appellate Division of the Supreme Court, and that appeal is undetermined. No other proceeding was commenced by any other landowner for a change of route, and it is admitted that more than 15 days before this proceeding was instituted due written notice was given to the defendants of the time and place the map and profile showing the plaintiff's proposed route were filed.

The defendants' claim that this proceeding was prematurely brought is based upon the decision of this court in the Third Department, in the case of New York & Albany Railroad Company v. New York, West Shore & Buffalo Railroad Company, 11 Abb. N. C. 386. That decision was under section 22, c. 140, p. 221, of the Laws of 1850, which section has been repealed and entirely rewritten. The court by that decision held that:

"The route therefore cannot be definitely established until the fifteen days after the notice shall have expired without any application, or until all applications for a change, shall have been decided in the highest appellate tribunal."

I can find nothing in the law of 1850 that warranted the court in holding that a railroad company, after giving the 15 days' notice of the filing of the map, must wait until "all applications for a change of route shall have been decided in the highest appellate tribunal" before instituting proceedings for the condemnation of real property for its proposed route. However, that was the decision, and became the law in 1882. In 1890 the railroad law was enacted, and section 6 provided as follows:

"No such corporation shall institute any proceeding for the condemnation of real property, in any county, until after the expiration of fifteen days from the service by it of the notice required by this section, nor until after the final determination of all applications that may be made for a change of route, in such county." Laws 1890, p. 1084, c. 565, § 6.

This form of legislation seems to have been adopted to conform to the decision of Mr. Justice Learned in the case above referred to. In 1892 that part of section 6 of the railroad law just quoted was amended by striking therefrom the following:

"Nor until after the final determination of all applications that may be made for a change of route in such county." Laws 1892, p. 1384, c. 676, § 6.

It must be perfectly plain that the Legislature, in striking out the words last above quoted, intended that the railroad company should not be required to wait before commencing its condemnation pro-

ceeding until after the final determination of all applications that may be made for a change of route, and the statute ever since has provided, and now provides:

"No such corporation shall institute any proceeding for the condemnation of real property in any county, until after the expiration of fifteen days from the service by it of the notice required by this section."

It is conceded that the notice to all actual occupants of the lands over which the route of the proposed road is designated was duly given to these defendants and to all other occupants or owners. The giving of such notice was the only prerequisite to the institution of this proceeding. Besides the alteration proposed by the Gumaerd Lead & Zinc Company involves less than a mile of the plaintiff's proposed route, and is 25 miles away from the defendants' property, and can in no wise affect it; and if the Gumaerd Lead & Zinc Company should be successful on its appeal, and the proposed alterations of the plaintiff's route should be made, it could in no event affect the defendants' lands or the plaintiff's proposed route over the defendants' lands.

The evidence is ample to establish the allegation of the petition that the plaintiff herein has been unable to agree with the defendants for the purchase of the lands in question. The testimony shows that the plaintiff has offered the defendants the sum of $5,000 for the lands to be taken and that the defendants demanded the sum of $25,000. It appears, also, that nearly two years ago the plaintiff negotiated with the defendants for the purchase of substantially the lands in question, which consist of about 6 acres out of a farm of about 300 acres. At that time the plaintiff's offer was $4,000; but it was rejected by the defendants, who demanded $25,000. Thereafter, and before this proceeding was commenced, the plaintiff made a slight change in its proposed route across the defendants' farm, for the purpose of excluding a spring from which water is carried to the defendants' house, and thereafter offered the sum of $5,000, which was rejected; and thereafter the defendants made a proposition to sell the lands, with certain reservations, to the plaintiff for the sum of $15,000, which proposition the plaintiff rejected. I fail to see how the plaintiff could have done much more in the way of a bona fide offer to acquire the property of the defendants by purchase.

The next point made by the defendants in opposition to this proceeding is that the plaintiff's proposed route across the defendants' lands will destroy his water supply. Section 7 of the railroad law provides:

"Waters commonly used for domestic, agricultural or manufacturing purposes shall not be taken by condemnation, to such an extent as to injuriously interfere with such use in future."

I find as a matter of fact from the testimony that the taking and use by the plaintiff of the defendants' lands in the manner proposed will not injuriously interfere with the defendants' water supply or their sources. The spring from which water is piped to the defendants' house is not included in the lands to be taken, and will not be injuriously or materially affected thereby. While the pond from

which water is carried to other parts of the defendants' premises is included in the plaintiff's proposed right of way, yet it appears that the use by the defendants of the waters of the pond will not be injuriously interfered with, for the reason that the proposed railroad track is to be elevated on a trestle or bridge many feet above the pond in question. But in my opinion the provisions of section 7 of the railroad law just quoted, providing that waters commonly used for domestic, agricultural, or manufacturing purposes shall not be taken by condemnation to such an extent as to injuriously interfere with their use, does not apply to this case, and only applies where the railroad company seeks to take waters for its use, and not where lands for its right of way only are sought to be acquired.

The first legislative enactment on this subject was by chapter 237, p. 441, of the Laws of 1869, which amended section 21 of the railroad law of 1850, and gave to a railroad company the right to take and convey water from any spring, pond, creek, or river to such railroad for the uses and purposes thereof, and prohibited the taking of such waters to such an extent as to injuriously interfere with their use. Prior to this enactment there was no authority for the taking by condemnation of water by a railroad company for its use. This section 21 was repealed by the general railroad law in 1890, and was substantially rewritten into section 7 of the present railroad law (Laws 1892, p. 1386, c. 676). Section 7 of the railroad law as it stands to-day gives the railroad company the right to acquire lands "for any right to take and convey water from any spring, pond, creek or river to such railroad for the uses and purposes thereof, together with the right to build or lay aqueducts or pipes, for the purpose of conveying such water," etc. This right, however, is qualified by the provision upon which the defendants rely, contained in the same section and following that part last above quoted, and which reads as follows:

"Waters commonly used for domestic, agricultural or manufacturing purposes shall not be taken by condemnation to such an extent as to injuriously interfere with such use in future."

From the foregoing it seems to me perfectly clear that the intention of the Legislature was, in the first place, to authorize the taking by condemnation of water by a railroad company for the uses and purposes of its railroad, and at the same time prohibiting the taking of water for such purposes to such an extent as to injuriously interfere with their use for domestic and agricultural purposes. In this case the plaintiff is not seeking to take by condemnation any water under subdivision 4 of section 7 of the railroad law, and I therefore hold that the provisions of that section have no application to this case.

The foregoing are the only claims urged by the defendants which I deem it necessary to consider in this opinion. I have given careful attention to every question presented by the learned counsel for the defendants, both on the oral argument and by their very exhaustive brief; but I am unable to find that there is any merit in the defendants' opposition to the plaintiff's application to acquire the lands necessary for the completion of its railroad.

The plaintiff is entitled to judgment for the condemnation of the property described in the petition and for the appointment of commissioners of appraisal to ascertain the compensation to be made to the owners of said property.